# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASSOCIATION OF CONNECTICUT LOBBYISTS LLC, ET AL., <br>     Plaintiffs, <br><br> v. <br><br> JEFFREY GARFIELD, ET AL., <br>     Defendants, <br><br> AUDREY BLONDIN, KIM HYNES, TOM SEVIGNY, CONNECTICUT COMMON CAUSE, and CONNECTICUT CITIZENS ACTION GROUP, <br>     Intervenor-Defendants. | CIVIL ACTION NO. <br> 3:06cv1030 (SRU), <br> (consolidated with 06cv1360). |

## RULING ON MOTIONS TO INTERVENE

The proposed intervenor-defendants, Audrey Blondin, Kim Hynes, Tom Sevigny, Connecticut Common Cause ("CCC") and Connecticut Citizens Action Group ("CCAG"), have moved to intervene in two consolidated actions challenging Connecticut's recently-enacted campaign finance reform law. For reasons that follow, their motions are granted.

**I.    Background**

On December 7, 2005, the Connecticut General Assembly passed "An Act Concerning Comprehensive Campaign Finance Reform for State-Wide Constitutional and General Assembly Offices." The law, codified at Conn. Gen. Stat. § 9-333, et seq., became effective on December 31, 2006. Among other things, the law bans lobbyists from contributing to, or soliciting donations on behalf of, candidates for Connecticut State political offices. The law also creates a Citizens' Election Program that contributes money to prospective candidates' campaign treasuries. Conn. Gen. Stat. §§ 9-333(j), 9-700 to 9-717.

The plaintiffs in the consolidated cases filed complaints in which they seek declaratory and injunctive relief to prevent the State Elections Enforcement Commission from enforcing various provisions of the law. The plaintiffs argue that the law violates the First and Fourteenth Amendments to the United States Constitution, and Sections four and five of the Connecticut Constitution. The movants support the new campaign finance law and seek to intervene as defendants.

The proposed intervenors consist of two identifiable groups. The first group, Audrey Blondin, Kim Hynes, and Tom Sevigny, are former candidates for state office who plan to run again in the future. Blondin was a Democratic candidate who ran for Secretary of the State in 2004 and who will likely run for Secretary of the State or Governor in 2010. Hynes was a Democratic candidate who ran for State Representative for the 149th District in 2004 and who will likely run for the same office again in 2008. Sevigny was a Green Party candidate who ran for State Representative for the 8th District in 2004 and who will likely run for the same office again in 2008. The candidates claim they will be more likely to run for office under the new campaign finance law because several of the law's provisions will partially alleviate the overwhelming financial advantage that incumbents typically wield over challengers. Specifically, the Citizen's Election Program will help challengers raise more money for their campaigns, and the donation and solicitation bans will prevent incumbents from tapping into a substantial pool of financial resources to which incumbents have traditionally enjoyed disproportionate access.

The second group of proposed intervenors, CCC and CCAG, are large non-profit lobbying organizations that advocated for and support the law. Both organizations have

thousands of members who reside in Connecticut. As a lobbying organization that does not contribute to political campaigns, CCC's executive director believes that CCC is at a significant disadvantage to other lobbying organizations that do contribute to political campaigns.

In the instant motions, the movants argue in the alternative that they should be permitted to intervene: (1) as of right, pursuant to Rule 24(a)(2); and (2) permissively, pursuant to Rule 24(b)(2). Because it is dispositive of the issues presented in the instant motions, I address only permissive intervention.[1]

## II. Discussion

Rule 24(b)(2) provides that:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*Id*. "[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b)." 7C WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1913 at 376 (2d ed. 1986) ("WRIGHT & MILLER"); *see also United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). The principal consideration for courts in exercising their discretion is whether the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." WRIGHT & MILLER § 1913 at 379; *Brennan*, 579 F.2d at 191; *Bridgeport*

---

[1] It appears that the movants also can meet all four elements of Rule 24(a)(2). "To intervene as of right, a movant must: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Brennan v. New York City Board of Education*, 260 F.3d 123, 128-29 (2d Cir. 2001) (internal quotations omitted). Nevertheless, because I hold that permissive intervention is appropriate here, it is not necessary to consider whether the movants are entitled to intervene as of right.

*Guardians v. Delmonte*, 227 F.R.D. 32, 34 (D. Conn. 2005). "Additional parties always take additional time which may result in delay, but this does not mean that intervention should be denied. The rule requires the court to consider whether intervention will 'unduly delay' the adjudication." WRIGHT & MILLER § 1913 at 381-82.

In addition to Rule 24(b)(2)'s requirements, courts consider other factors in determining whether permissive intervention is appropriate, such as:

> (1) whether the applicant will benefit by intervention, (2) the nature and extent of the intervenors' interests, (3) whether [the intervenors'] interests are adequately represented by the other parties, and (4) whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Schaghticoke Tribal Nation v. Norton*, 2006 U.S. Dist. LEXIS 42643, *25-*26 (D. Conn. 2006) (citing *Brennan*, 579 F.2d at 191-92) (internal quotations omitted).

The requirements for permissive intervention set forth in Rule 24(b)(2) are met here. As an initial matter, the movants' petition is timely. The plaintiffs filed the complaints in these cases on July 6, 2006 and August 31, 2006. The cases were transferred several times within the District of Connecticut until September 20, 2006 and October 2, 2006, when they were transferred to me. The movants filed the instant motions to intervene in both cases on October 17, 2006, the same day as the original defendants filed their answer. One of the plaintiffs had already filed a motion for preliminary injunction on October 16, 2006, but only one day before the intervenor-defendants filed the instant motions. Besides the motion for preliminary injunction, no other parties had filed any significant substantive motions. *See id.* at *25 (holding that a motion to intervene is timely where "[t]he Petition for Review . . . was filed on January 12,

2006, the Federal Defendants filed their Answer . . . on March 27, 2006, and the movants moved to intervene on April 24, 2006 . . . , prior to any significant substantive motions by the parties to the case." The movants thus "sought to intervene at a very early stage in this litigation . . . .").

The movants' defenses also share the same or similar questions of law and fact with the main action, and intervention will not prejudice any of the parties nor will it unduly delay the adjudication. In fact, the additional briefing and argument will only help to facilitate a speedy, fair and accurate resolution of the case. Additional discovery is also not likely to become burdensome or otherwise unduly delay adjudication because this case, at a base level, is a facial constitutional challenge to a newly-enacted statute.

In addition to meeting Rule 24(b)(2)'s express requirements, the other factors courts consider in determining whether intervention is appropriate also weigh in the movants' favor. Both groups of proposed intervenors will benefit by the intervention and both groups have substantial interests in the outcome of the case. For the political candidates, their relative access to campaign funds, and thus, one factor affecting their chances for success in the next election cycle, hangs in the balance. For the lobbying organizations, the manner in which they lobby the legislature, and the very purposes for which the organizations were originally created, namely, election reform, are at stake.

The movants will also significantly contribute to full development of the underlying factual issues and to the just and equitable adjudication of the legal questions presented. The candidates and organizations offer a unique, personal and highly relevant factual perspective to the law, its development, and its impact. The movants also offer specialized expertise and substantial familiarity with the legal issues that are presented for review. The court will only

benefit from their participation. *See Schaghticoke Tribal Nation*, 2006 U.S. Dist. LEXIS 42643 at *27 ("The Movants' experience with these issues and full participation up to this point with [sic] help to provide the Court with a full picture of the issues to be decided and will permit the issues to be fully and thoroughly evaluated in an efficient, just, and speedy manner.").

Finally, although it is a slightly closer question, the intervenors' interests may not be adequately represented by the government. The government's ultimate objective is admittedly similar to the movants' ultimate objective. Specifically, both parties seek to defend the constitutionality of the campaign finance reform law. Nevertheless, the parties' primary motivations for achieving their objective diverge. The government is obligated to defend the law, and seeks predominantly to preserve the law's wide-ranging and long-term societal impact, namely, eliminating actual corruption, the appearance of corruption and restoring the public confidence in the electoral system. The movants, by contrast, are voluntarily defending the law, and are concerned with preserving the immediate, narrow and personal impact of the law on the specific movants in the upcoming elections and in the lobbying industry. As long as the broader societal impact of the law is preserved, the government has less interest in whether future candidates or lobbying organizations are harmed by this litigation. It is thus possible that the government may not emphasize or vigorously defend all aspects of the challenged law that are critical to the movants' interests. *See New York Public Interest Research Group, Inc. v. Regents of University of New York*, 516 F.2d 350, 352 (2d Cir. 1975) (holding that the "lack of adequate representation" prong is met when an intervenor would make a "more vigorous presentation" of a side of an argument than the government defendant).

## III. Conclusion

For the foregoing reasons, Rule 24(b)(2)'s requirements are met, and the other pertinent factors weigh in the movants' favor. Permissive intervention is thus appropriate pursuant to Rule 24(b)(2), and there is no need to address whether intervention as of right, pursuant to Rule 24(b)(2), is appropriate.

The proposed intervenor-defendants motions to intervene **(docs. ## 25, 34)** are hereby GRANTED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 27th day of February 2007.

                                        /s/ Stefan R. Underhill
                                        Stefan R. Underhill
                                        United States District Judge